UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAN RICHMOND,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MISSION BANK,<br><br>　　　　　Defendant. | Case No.: 1:14-cv-00184 - AWI - JLT<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES<br><br>(Doc. 6)<br><br>ORDER CONTINUING SCHEDULING CONFERENCE |

Plaintiff Jan Richmond seeks to strike affirmative defenses asserted by Defendant Mission Bank. (Docs. 6-7.) Defendant filed its opposition to the motion on May 1, 2014 (Doc. 9), to which Plaintiff filed a reply on May 7, 2014 (Doc. 10). For the following reasons, Plaintiff's motion to strike is **GRANTED**.

**I.     Factual and Procedural History**

Plaintiff initiated this action by filing a complaint against Mission Bank on February 10, 2014. (Doc. 2.) Her complaint contains the following factual allegations: Plaintiff was employed by Mission Bank as an executive administrative assistant to the bank president and board secretary beginning July 7, 2007. (*Id.* at 1.) In April 2011, Mission Bank implemented a plan for the Bank's president to be replaced by A.J. Antongiovanni. (*Id.* at 2.) Plaintiff asserts that once Antongiovanni became the bank president, Plaintiff was removed from her private office and given a cubical "notwithstanding the fact

1

private offices were empty and available, and Plaintiff engaged in activities that required privacy and confidentiality." (*Id.*)

Plaintiff alleges that in December 2012, Antongiovanni hired an executive assistant "who is substantially younger than Plaintiff." (Doc. 2 at 2.) Plaintiff asserts that the new executive assistant, "DL," obtained a position that was not posted, despite Mission Bank's "policy of posting within the bank all open and available employment positions." (*Id.*)

According to Plaintiff, she was asked to perform a background check on DL as a condition of her employment, including a credit check. (Doc. 2 at 2.) Plaintiff alleges, "DL's credit history was such that it should have precluded her from being hired. In fact, another older employee was given a similar letter of hire subject to a background check at or around the same time, yet was precluded from hire due to a credit background which was better than the credit background of DL." (*Id.*) Although Plaintiff found DL had credit problems, Antongiovanni hired DL on December 15, 2011.[1] (*Id.*) Plaintiff asserts that DL "received a bonus of $2000 for the year even though defendant Mission's policy was to only give bonuses to assistant vice presidents and above,"and DL was not in one of those positions. (*Id.* at 2-3.) Plaintiff asserts that "DL was given a private office based upon the excuse that she handled confidential matters." (*Id.*)

In 2013, Plaintiff's responsibility of "handling all Human Resources functions" was taken from her. (Doc. 2 at 3.) In addition, although Plaintiff had acquired the title of a vice president, she "was excluded from a management seminar in May 2013," and was the only vice president excluded. (*Id.*) Throughout 2013, Plaintiff's responsibilities were reduced to "the point that she was ultimately only performing work relating to administrative functions for the board of directors." (*Id.*) However, "[i]n the fall of 2013, D.L. began performing administrative functions for the board of directors." (*Id.*) Plaintiff asserts that it appeared "clear" that Mission Bank and Antongiovanni, "were pushing Plaintiff out of the bank as an employee." (*Id.*)

Plaintiff alleges that on or about September 3, 2013, she "met with Antongiovanni and advised him [that] she realized what was happening, indicated she felt like she and others were victims of age

---

[1] The complaint is inconsistent as to the date D.L. was hired. (Doc. 2 at 2) In paragraph 6, it alleges D.L. was hired, "In December 2012." *Id*. In paragraph 7, it alleges "D.L. was hired on 12/15/11." *Id*.

discrimination, and requested that the bank offer her a severance package." (Doc. 2 at 3.) In response, "Antongiovanni instructed Plaintiff to go home." (*Id.* at 3.) Plaintiff asserts she was later "contacted by Antongiovanni [a]nd told not to return to defendant Bank." (*Id.* at 3-4.) Further, Plaintiff "was advised to attend a meeting where a severance would be discussed. (*Id.* at 4.) According to Plaintiff:

> Said meeting occurred and Plaintiff indicated she rejected the severance offer and made a counteroffer. No agreement was reached between the parties as to a severance agreement. Because Plaintiff had been told by Antongiovanni not to return to the bank her employment had been terminated. Alternatively, Plaintiff's employment was constructively terminated as her job duties had been taken away, she had been replaced by someone substantially younger, and her hours had been cut.

(*Id.* at 4.)

Plaintiff filed a claim with the California Department of Fair Employment and Housing, pursuant to California Government Code §12965(b) and FEHA. (Doc. 2 at 4.) In addition, she filed a claim with the EEOC, and received "right-to-sue" letters from both agencies. (*Id.*) Accordingly, Plaintiff initiated the action now pending before the Court, asserting Defendant is liable for: (1) wrongful termination in violation of public policy; (2) wrongful termination in violation of 29 U.S.C. § 626; (3) wrongful termination in violation of FEHA, Cal. Gov't Code § 12940; (4) failure to take all reasonable steps to prevent discrimination and retaliation; and (5) retaliation in violation of FEHA. (Doc. 2 at 5-12.)

On March 24, 2014, Defendant filed its answer to Plaintiff's complaint. (Doc. 5) In the answer, Defendant denied most of the allegations of Plaintiff's complaint and set forth its view of the matter. *Id*. at 6-8. Defendant alleges that Plaintiff was employed by the bank and that her job duties changed from time-to-time. *Id.* at 6. When her job duties changed, Plaintiff accepted the changes in writing. *Id*. Defendant admits that another employee took on some of Plaintiff's job duties and was given an office despite that Plaintiff was required to remain situated in a cubicle. *Id*. at 6-7. Defendant explains that this was for an unnamed business reason. *Id*.

Defendant alleges Plaintiff became frustrated with the situation but did not speak to her supervisors or make a formal complaint about it. (Doc. 5 at 6) Instead, on or about August 28, 2013, Plaintiff met with A.J. Antongiovanni and told him she was resigning. *Id*. at 7. Defendant alleges that she had made a similar statement at some point in the past but had actually quit. *Id*. As a result of her

1  August 28, 2013 statement that she was resigning, she was sent home for the remainder of the day, with
2  pay. *Id*. The next work day, Plaintiff provided her written resignation and demanded a severance
3  package which totaled two years of pay and benefits. *Id*. In addition, she demanded that she receive
4  unemployment benefits. *Id*.

5       Along with the severance demand, Plaintiff reported for the first time that she felt she had been
6  treated differently or discriminated against due to her age. (Doc. 5 at 6) In return, Defendant accepted
7  the resignation and made a written offer of a severance package. *Id*. When Plaintiff disagreed with the
8  terms of the severance package, Antongiovanni provided her a revised package. *Id*. Even still, Plaintiff
9  rejected the revised severance offer and rebuffed further discussions on the topic. *Id*. Plaintiff did not
10 rescind her resignation and never again returned to work. *Id*. After this, another person—not D.L.—
11 was hired to replace Plaintiff. *Id*.

12      Based upon these factual allegations, Defendant asserted seventeen affirmative defenses, and
13 reserved "the right to amend th[e] Response as additional affirmative defenses become known and/or
14 available to Defendant." (Doc. 5 at 11.)

15 **II.  Pleading Standards for Affirmative Defenses**

16      The Federal Rules of Civil Procedure require a party responding to a pleading to identify its
17 defenses to each claim asserted. Fed. R. Civ. P. 8(b)(1). Further, responding parties are instructed to
18 "state any avoidance or affirmative defense, including: accord and satisfaction; assumption of risk;
19 contributory negligence; duress; estoppel; failure of consideration; fraud; illegality; injury by fellow
20 servant; laches; license; payment; release; res judicata; statute of frauds; statute of limitations; and
21 waiver." Fed. R. Civ. P. 8(c).

22      Notably, the parties disagree as to whether the affirmative defenses require only fair notice or
23 are subject to a heightened pleading standard. Defendant argues that "[a]ll that is required is that the
24 Answer state 'in short and plain terms its defenses to each claim asserted against it.'" (Doc. 9 at 2,
25 quoting Fed. R. Civ. P. 8(b)(1)). On the other hand, Plaintiff asserts the Court should apply the
26 heightened "plausibility" standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell*
27 *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which would require Defendant to plead "enough
28 facts to state a claim to relief that is plausible on its face." (Doc. 7 at 2, citing *J & J Sports Prods. v.*

*Franco*, 2011 U.S. Dist. LEXIS 25642 (E.D. Cal. 2011)).

Though "courts are in disagreement as to whether the pleading standard articulated in *Twombly* and *Iqbal* extends to the pleading of affirmative defenses," this Court has determined that "affirmative defenses are subject to the heightened pleading standards announced in *Twombly* and *Iqbal*." *Dodson v. Strategic Rests. Acquisition Co. II, LLC*, 289 F.R.D. 595, 599, 603 (E.D. Cal. 2013); *see also J & J Sports Prods. v. Franco*, 2011 U.S. Dist. LEXIS 25642 (E.D. Cal. 2011) (adopting the heightened pleading standard). Accordingly, "[i]n pleading an affirmative defense, a party must give 'fair notice of what the affirmative defense] is and the grounds upon which it rests.'" *Dodson*, 289 F.R.D. at 603 (citing *Twombly*, 550 U.S. at 555; *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) *see also Kohler v. Staples,* 291 F.R.D. 464, 469 (S.D. Cal. 2013) (finding that an affirmative defense "must at least give notice of the grounds upon which it rests").

### III.     Motion to Strike

The Court may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading, either on the Court's own motion or by motion of a party. Fed. R. Civ. P. 12(f). A defense may be "insufficient" as a matter of pleading or as a matter of law. *See Security People, Inc. v. Classic Woodworking, LLC*, 2005 U.S. Dist. LEXIS 44641, at *5 (N.D. Cal. Mar. 4, 2005) (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)). A defense is insufficiently pled if it fails to give "fair notice" of the defense, and is insufficient as a matter of law when there are no questions of fact or law, and the defense would not succeed under any circumstances. *Wyshak*, 607 F.2d at 827; *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995) (citations omitted). Further, a defense may be stricken as immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citations omitted), *rev'd on other grounds*, 510 U.S. 517 (1994); *see also* Fed. R. Civ. P. 12(f).

The purpose of a motion to strike under Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike affirmative defenses "are disfavored and infrequently granted." (*Neveau v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal. 2005). The

Court "must view the pleading under attack in the light more favorable to the pleader." *Garcia ex rel. Marin v. Clovis Unified School Dist.*, 2009 WL 2982900, at *23 (E.D. Cal. Sept.14, 2009) (internal citation omitted). Even if a court strikes an affirmative defense, leave to amend should be freely given where the opposing party will not be prejudiced given the strong policy favoring resolution of cases "on the proofs rather than the pleadings." *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 213 (9th Cir. 1957); *Wyshak*, 607 F.2d at 827.

Plaintiff seeks to strike the First, Second[2], Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, and Sixteenth Affirmative Defenses. (Docs. 6-7.) In addition, Plaintiff seeks to strike factual allegations related to Plaintiff's unemployment proceedings. (Doc. 7 at 2-3.) Defendant agrees that the Fifth, Twelfth, and Sixteenth Affirmative Defenses are not proper and should be stricken without leave to amend. (Doc. 9 at 5-6.) In addition, Defendant agrees the factual allegations related to the unemployment proceedings may be stricken, and acknowledges the Sixth and Ninth Affirmative Defenses are insufficient as a matter of pleading. (*Id.*) Accordingly, the Court addresses only the disputed affirmative defenses.

## IV. Discussion and Analysis

**A. First Affirmative Defense:** "Plaintiff's complaint and each claim therein, fails to state facts sufficient to constitute a claim for relief against Defendant." (Doc. 5 at 8.)

Plaintiff notes that this Court previously determined "such a defense to be subject to being stricken." (Doc. 7 at 3) (citing *Joe Hand Promotions, Inc. v. Alvarado*, 2010 U.S. Dist. LEXIS 125441 (E.D. Cal. 2010)). On the other hand, Defendant argues that the defense is proper because: "Federal Rule of Civil Procedure 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted (Rule 12(b)(6)) may be raised 'in any pleading allowed or ordered under Rule 7(a).' Pleadings allowed by Rule 7(a) include answers." (Doc. 9 at 3.)

Previously, this Court explained that proper "[a]ffirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true." *Federal Deposit Ins. Corp. v. Main Hurdman*, 655 F. Supp. 259, 262 (E.D. Cal.

---

[2] Although the Second Affirmative Defenses is not identified as challenged in the Notice of Motion, Plaintiff addresses this affirmative defense in the moving papers. (Doc. 6 at 1; Doc. 7 at 3.)

1987) (citing *Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980)). Although the Federal Rules of Civil Procedure provide that failure to state a claim *may* be identified in an answer[3], numerous courts have determined this is not a proper affirmative defense because it is simply an assertion of a defect in the complaint. *See, e.g.*, *Powell v. Union Pac. R.R. Co.*, 864 F. Supp. 2d 949, 962 (E.D. Cal. 2012) (striking the affirmative defense where the defendant asserted the plaintiff "failed to allege … the facts necessary to support his various claims" because failure to state a claim was an improper affirmative defense); *Barnes v. AT&T Pension Benefit Plan,* 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010) ("Failure to state a claim is not a proper affirmative defense but, rather, asserts a defect in [the plaintiff's] prima facie case"); *Vogel v. Huntington Oaks Del. Partners, LLC*, 291 F.R.D. 438, 442 (C.D. Cal. 2013) ("failure to state a claim is not an affirmative defense; it is a defect in a plaintiff's claim"); *see also Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002) ("that [a] plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense"). Accordingly, Defendant's first affirmative defense is **STRICKEN**.

      **B.**      <u>Second Affirmative Defense (Consent)</u>:  "Plaintiff's claims are barred by Plaintiff's consent to, and/or voluntary participation in, some or all of the acts or conduct alleged. Specifically, Plaintiff consented to changes to her job duties and voluntarily resigned her employment."  (Doc. 5 at 8.)

Defendant asserts that if Plaintiff consented to changes in her job duties, "those actions could not form the basis of a 'constructive discharge.'"  (Doc. 9 at 3.) According to Defendant, its "evidence will demonstrate that [Plaintiff] consented or specifically agreed (and in some instances requested) to the changes that she now uses to claim that she worked in a hostile environment." (*Id.*) Importantly, however, Defendant has cited no legal authority for its position that consent is an affirmative defense to Plaintiff's claims for wrongful termination, discrimination, and retaliation and the Court has not located any such authority. Though Plaintiff's consent to changes in her assigned duties clearly undermines her claim that she suffered discrimination, it does not appear "consent" in this context is a proper affirmative defense to the claims presented as it addresses only a portion of the factual

---

[3] The difficulty with Defendant's rationale is that Fed. R. Civ. P. 12(h)(2) permits a defendant to wait to raise Plaintiff's failure to state a claim until trial. By definition, an affirmative defense *must* be raised in the answer or by motion or it is waived. Indeed, Federal Rules of Civil Procedure 12(h)(1) specifically excludes this topic from those that *must* be raised in order to avoid a waiver.

underpinnings for the claim of construction discharge and does not address the claim itself.  Instead, in this context, it is more in line with the discussion above that the Plaintiff cannot meet her burden of proof.  Therefore, it is **STRICKEN**.

   C. **Fourth Affirmative Defense (Failure to Exhaust Internal Remedies):** "Plaintiff's claims are barred, in whole or in part by Plaintiffs unreasonable failure to take advantage of preventative and/or corrective opportunities and by her unreasonable failure to exhaust other internal remedies that Defendant provided." (Doc. 5 at 8.)

According to Defendant, "if Plaintiff perceived she was being treated differently because of her age she failed to make any internal complaints or raise the issue until after" the termination of her employment with Mission Bank.  (Doc. 5 at 8.)  Defendant asserts these allegations satisfy the notice requirement, because [w]hat the internal processes consisted of, where it was found, and whether Plaintiff was aware of them, can be determined in discovery." (*Id.*)  On the other hand, Plaintiff asserts that further information must be plead, including the policy itself, its specific provisions, and what Plaintiff failed to do.  (Doc. 10 at 2.)

The Court notes the defense is subtitled, "Failure to Exhaust Internal Remedies" though the information contained within the defense seems to indicate that the defense is merely that Plaintiff never complained about the situation before she resigned.  Thus, the description seems to be at odds with the subtitle.  If the subtitle was eliminated, the Court would find that the factual allegations set forth are sufficient.  However, with the subtitle, it is unclear exactly what internal remedies were available and what they required.  Thus, Defendant has not provided a sufficient factual basis for the defense and, consequently, Defendant has failed to state "the grounds upon which [the affirmative defense] rests."  *See Dodson*, 289 F.R.D. at 603; *Twombly*, 550 U.S. at 555.  Accordingly, the Fourth Affirmative Defense is **STRICKEN** with leave to amend.

   D. **Third, Seventh, Tenth, Eleventh, and Thirteenth Affirmative Defenses:** Good Faith Conduct, Reasonable Factor other than Age, Lawful Reasons for Termination, Business Necessity, and Actions Unrelated to Protected Status or Activity (Doc. 5 at 9-10.)

Plaintiff argues these affirmative defenses are not proper because "defendant merely denies that age was a factor." (Doc. 7 at 4.)  Plaintiff notes that this Court previously explained: "general denials of the allegations in the complaint or allegations that plaintiff cannot prove certain elements of

8

1 his claim are not affirmative defenses." (*Id.*, quoting *Joe Hand Promotions, Inc. v. Alvarado*, 2010 U.S. Dist. LEXIS 125441 (E.D. Cal. 2010)). However, under FEHA courts employ a shifting burden to evaluate claims of retaliation and discrimination. Accordingly, once a plaintiff establishes a prima facie case, the employer must offer a legitimate, nondiscriminatory reason for the actions. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 833-34 (9th Cir. 1995); *Smith v. Barton*, 914 F.2d 1330, 1340 (9th Cir. 1990). Accordingly, these defenses are relevant to the claims presented by Plaintiff.

Defendant asserts Mission Bank "changed Plaintiffs job duties for business reasons and not because of Plaintiffs age." (Doc. 5 at 8.) In addition, Defendant alleges, "If Defendant's actions are deemed a constructive termination, Plaintiff's employment with Defendant was terminated for non-pretextual reasons other than the discrimination and/or retaliation alleged by Plaintiff." (*Id.*) Further, Defendant alleges the bank "would have taken the same action even in the absence of Plaintiff's affiliation with a protected class or engagement in alleged protected activity." (*Id.* at 10.) Plaintiff contends the affirmative defenses are insufficiently plead because "[t]here is nothing set forth in the defense that gives fair notice to what defendant claims is the nondiscriminatory reason why it took the actions it did." (Doc. 10 at 2.)

Under the heightened pleading standard, "in order to adequately 'state . . . its defenses to each claim asserted against it' under Rule 8(b)(1), a party must allege 'sufficient factual matter, accepted as true,'… to demonstrate that plaintiff lacks a right of recovery." *Dodson*, 289 F.R.D. at 601 (quoting *Iqbal*, 556 U.S. at 678. This Court has explained, "To hold otherwise would permit defendants to merely plead 'labels and conclusions' or 'a formulaic recitation of the elements of' an affirmative defense… and in so doing, undermine the rationale of *Twombly* and *Iqbal*." *Id.* (quoting *Twombly*, 550 U.S. at 555. Consequently, Defendant has the burden to state sufficient facts to support its conclusion that "there were legitimate reasons for Defendant's actions other than Plaintiff's age." (*See* Doc. 9 at 4.)

The ambiguity of the pleading makes it unclear whether it is adequately supported by factual allegations. For example, there are clear factual allegations that Plaintiff chose to quit her job. However, Plaintiff's separation from her employment is only one of the adverse employment actions

she alleges.  If these defenses are directed *only* to her job separation, the factual allegations are sufficient assuming Defendant makes this clarification.  However, if these defenses are intended also to address the other adverse employment actions, such as the change(s) in job duties and the move from the private office to the cubicle, there are no factual allegations to support these actions.  The fact that Plaintiff "accepted" the duty changes is not equivalent to a determination that the motivation for the change in job duties was not discriminatory and the fact that Defendant alleges these actions were taken in good faith and for a legitimate business reason, does not translate these conclusions to adequate factual support.

Thus, as currently pleaded, the affirmative defenses identified above are not sufficiently supported by the factual allegations set forth in the answer.  Accordingly, the Third, Seventh, Tenth, Eleventh, and Thirteenth Affirmative Defenses are **STRICKEN** with leave to amend.

> **E.   Fourteenth Affirmative Defense (Limited by Scope of Administrative Complaint):**
> "The Complaint and each cause of action alleged therein are barred to the extent that they exceed the scope of the applicable administrative complaint, if any, that Plaintiff filed with the California Department of Fair Employment and Housing and/or the Equal Employment Opportunity Commission, and/or any other government agency, on which the complaint appears to be based."  (Doc. 5 at 10.)

Defendant asserts:  "The claims for relief outlined in the complaint may be further fleshed out in discovery as the case proceeds. To the extent the claims move beyond Plaintiff's administrative charges, Defendant may defend the claims for relief to the extent they go beyond the administrative charges."  (Doc. 9 at 6) (citing *Shah v. Mt. Zion Hosp. & Med. Ctr.,* 642 F.2d 268, 271-72 (9th Cir. 1981)). Plaintiff contends that "Defendant fails to provide any notice as to what the content of the EEOC or DFEH charges that make them inadequate for the current complaint." (Doc. 7 at 7)

Moreover, counsel admitted at the hearing that there is no current information which indicates Plaintiff's case exceeds her administrative complaints.  Thus, because there is no factual support for the Fourteenth Affirmative Defense, it is **STRICKEN**.  However, in the event that the case develops in such a way as to implicate claims that exceed the administrative action, this order **will not** preclude Defendant from raising this issue.  Indeed, if this occurs, the Court's jurisdiction would likely not extend to those additional claims. *Shah,* at 272.

///

**V.      Conclusion**

Many of the affirmative defenses asserted by Defendant appear to be boilerplate defenses that fail to provide Plaintiff with fair notice.  Rather, the affirmative defenses are legal conclusions and theories, without adequate factual support.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion to strike is **GRANTED**;
2. The request to strike factual allegations related to Plaintiff's unemployment proceedings is **GRANTED without leave to amend**;
3. The Third, Fourth, Sixth, Seventh, Ninth, Tenth, Eleventh, Thirteenth, and Fourteenth Affirmative Defenses Defendant are **STRICKEN with leave to amend**;
4. The First, Second, Fifth, Twelfth and Sixteenth Affirmative Defenses are **STRICKEN without leave to amend**; and
5. Any amended answer **SHALL** be filed within 21 days of the date of service of this order;
6. To allow the pleadings to become settled, the Court **CONTINUES** the scheduling conference from May 27, 2014 to **July 7, 2014** at 8:45.

IT IS SO ORDERED.

Dated:   **May 15, 2014**                              **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE