1
2
3
4
5
6
7
8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11    JAN RICHMOND,                        )    Case No.: 1:14-cv-0184 - JLT
                                           )
12                   Plaintiffs,           )    ORDER GRANTING IN PART PLAINTIFF'S
                                           )    MOTION TO COMPEL DISCOVERY
13           v.                            )
                                           )
14    MISSION BANK,                        )    (Doc. 41)
                                           )
15                   Defendant.            )
                                           )
16    ──────────────────────────────       )

17          Plaintiff Jan Richmond seeks to compel Defendant Mission Bank to provide further discovery

18    responses to requests production, and to produce an employee for a deposition.  (Doc. 41.)   The parties

19    filed their Joint Statement regarding the discovery disputes on April 3, 2015.  (Doc. 52.)  The Court

20    heard the oral arguments of the parties on April 10. 2015.  For the following reasons, Plaintiffs' motion

21    is **GRANTED IN PART**.

22    **I.      Factual and Procedural History**

23          Plaintiff, a former employee of Mission Bank, initiated this action by filing a complaint against

24    Mission Bank on February 10, 2014.  (Doc. 2.)  Plaintiff alleged that after A.J. Antongiovanni became

25    the bank president, she was removed from a private office and assigned a cubical "notwithstanding the

26    fact private offices were empty and available, and Plaintiff engaged in activities that required privacy

27    and confidentiality."  (*Id.* at 2.)  In addition, Plaintiff alleged Antongiovanni hired an executive assistant

28    in 2012 without announcing the job — despite Mission Bank's "policy of posting within the bank all

                                           1

open and available employment positions" — and the new assistant was "substantially younger than Plaintiff." (*Id.*) Plaintiff alleged the new assistant received a private office because "she handled confidential matters." (*Id.*)

In 2013, Plaintiff was the only vice president excluded from a management seminar. (Doc. 2 at 3.) Further, Plaintiff alleged that her job duties were reduced to "the point that she was ultimately only performing work relating to administrative functions for the board of directors." (*Id.*) However, Antongiovanni's new assistant "began performing administrative functions for the board of directors." (*Id.*) Plaintiff asserted it was "clear" that Antongiovanni and Mission Bank "were pushing Plaintiff out of the bank as an employee." (*Id.*) Plaintiff alleged that she "met with Antongiovanni and advised him [that] she realized what was happening, indicated she felt like she and others were victims of age discrimination, and requested that the bank offer her a severance package." (*Id.* at 3.)

Plaintiff filed claims with the California Department of Fair Employment and Housing and the EEOC, and received "right-to-sue" letters from both agencies. (Doc. 2 at 4.) Accordingly, she initiated the action now pending before the Court, asserting Defendant is liable for: (1) wrongful termination in violation of public policy; (2) wrongful termination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626; (3) wrongful termination in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (4) failure to take all reasonable steps to prevent discrimination and retaliation; and (5) retaliation in violation of FEHA. (*Id.* at 5-12.)

## II.    Scope of Discovery

The scope and limitations of discovery are set forth by the Federal Rules of Civil Procedure.  In relevant part, Rule 26(b) states:

> Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged manner that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the accident.  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b).  Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Relevancy is interpreted "broadly

1   to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on

2   any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

3   **III.**    **Discussion and Analysis**

4        **A.**     **Requests for Production**

5        Plaintiff seeks to compel further responses to Requests for Productions Nos. 22 and 28.  (Doc.

6   45 at 2, 7.)  A party may request documents "in the responding party's possession, custody, or control."

7   Fed. R. Civ. P. 34(a)(1).  Similarly, a party may serve a request "to permit entry onto designated land or

8   other property possessed or controlled by the responding party, so that the requesting party may

9   inspect, measure, survey, photograph, test, or sample the property . . ."  Fed. R. Civ. P. 34(a)(2).  A

10   request is adequate if it describes items with "reasonable particularity;" specifies a reasonable time,

11   place, and manner for the inspection; and specifies the form or forms in which electronic information

12   can be produced.  Fed. R. Civ. P. 34(b).  Thus, a request is sufficiently clear if it "places the party upon

13   'reasonable notice of what is called for and what is not.'"  *Kidwiler v. Progressive Paloverde Ins. Co.*,

14   192 F.R.D. 193, 202 (N.D. W. Va. 2000) (quoting *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408,

15   412 (M.D.N.C. 1992)); *see also* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal*

16   *Civil Procedure before Trial* (Rev. #1 2011) Discovery, para. 11:1886 ("the apparent test is whether a

17   respondent of average intelligence would know what items to produce").

18        The responding party must respond in writing and is obliged to produce all specified relevant

19   and non-privileged documents, tangible things, or electronically stored information in its "possession,

20   custody, or control" on the date specified.  Fed. R. Civ. P. 34(a).  Actual possession, custody or control

21   is not required.  "A party may be ordered to produce a document in the possession of a non-party entity

22   if that party has a legal right to obtain the document or has control over the entity who is in possession

23   of the document."  *Soto v. City of Concord*, 162 F.R.D. 603, 620 (N.D. Cal. 1995).  Such documents

24   include documents under the control of the party's attorney.  *Meeks v. Parson*, 2009 WL 3303718 (E.D.

25   Cal. Sept. 18, 2009) (involving a subpoena to the CDCR); *Axler v. Scientific Ecology Group, Inc.*, 196

26   F.R.D. 210, 212 (D. Mass. 2000) (a "party must produce otherwise discoverable documents that are in

27   his attorneys' possession, custody or control").

28        In the alternative, a party may state an objection to a request, including the reasons.  Fed. R.

Civ. P. 34(b)(2)(A)-(B).  The party who resists discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Oakes v. Halvorsen Marine Ltd.*, 189 F.R.D 281, 283 (C.D. Cal. 1998) (citing *Nestle Food Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)).  Boilerplate objections to a request for a production are not sufficient.  *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).

If a party "fails to respond that inspection will be permitted - or fails to permit inspection - as requested under Rule 34," the propounding party may make a motion to compel production of the documents.  Fed. R. Civ. P. 37(a)(3)(B)(iv).  Further, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  "The moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery."  *Hasan v. Johnson*, 2012 U.S. Dist. LEXIS 21578 at *5 (E.D. Cal. Apr. 9, 2012) (citing *Hallet v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

### 1.      Request for Production No. 22

Plaintiff requested Defendant produce: "The credit history and reviewed by YOU relating to the employment background of Diana Loera Wolf."  (Doc. 45 at 2.)  Defendant objected the information sought was "beyond the scope of permissible discovery as it is irrelevant to the subject matter of this litigation" and that the request was not "reasonably calculated to lead to the discovery of admissible evidence."  (*Id.*)  Further, Defendant objected "to this request on the ground that it improperly invades the privacy rights of a third party without notice of this request."  (*Id.*, citing *Goold v. Hilton Worldwide, Inc.*, 2014 WL 1383252 (E.D. Cal. Apr. 8, 2014); *Cervantes v. CEMEX, Inc.*, 2014 WL 4104200 (E.D. Cal. Aug. 18, 2014).

In response, Plaintiff argues that Ms. Wolf's credit history "is relevant to show that the bank failed to follow its policy in relation to hiring applicants with sufficient credit."  (Doc. 45 at 2.)  Importantly, Plaintiff's claims for wrongful termination on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA") and California's Fair Employment and Housing Act ("FEHA") require Plaintiff to show she was "(1) at least forty years old , (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal *or*

4

*inferior qualifications* or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'" *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation omitted, emphasis added) *see also Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 704 (9th Cir. 1993) (noting that California courts have adopted the analysis of the ADEA for age discrimination claims arising under FEHA). Thus, whether Ms. Wolf had an adequate credit rating and was, therefore, qualified to assume the Plaintiff's responsibilities is relevant to the claims in issue.

On the other hand, as Defendant argues, "Ms. Wolf's credit history . . . contains private, sensitive and confidential information." (Doc. 45 at 6.) Previously, this Court observed: "Federal Courts ordinarily recognize a constitutionally-based right of privacy that can be raised in response to discovery requests." *Megargee v. Wittman*, 2007 WL 2462097, at *2 (E.D. Cal. Aug. 24, 2007) (citing *Breed v. United States Dist. Ct. for Northern District*, 542 F.2d 1114, 1116 (9th Cir.1976); *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992); *Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548, 550-51 (E.D. Cal.1990). District Courts have adopted a balancing test used by California state courts to determine whether disclosure is appropriate, under which the Court must balance the plaintiff's need of the information against the claimed privacy right. *See, e.g., Cook* , 132 F.R.D. at 550-52; *Ragge v. MCA/Universal*, 165 F.R.D. 601, 604-05 (N.D. Cal. 1995); *see also Davis v. Leal,* 43 F.Supp.2d 1102, 1110 (E.D. Cal., 1999) (explaining that the right to privacy is subject to a balancing of the needs of the litigation with the sensitivity of the information and records sought).

In *Pioneer Electronics (USA), Inc. v. Superior Court*  40 Cal.4th 360, 370-371 (2007) and *Hill v. Nat'l Collegiate Athletic Assoc.,* 7 Cal.4th 1, 40 (1994), the California Supreme Court set forth an analytical framework for evaluating claims of invasion of privacy under the California Constitution. First, the employees must have a "legally protected privacy interest." *Hill*, 7 Cal. 4th at 35. Second, the employees must have "a reasonable expectation of privacy" in the information and third, the invasion of privacy must be "serious in nature, scope, and actual or potential impact." *Id.* at 36-37. If each is shown, the Court must then balance the privacy interest against the competing disclosure interest. *Pioneer*, 40 Cal.4th at 370-371.

In general, federal courts recognize an individual's interest in preserving the confidentiality of information contained within a personnel file. *Tumbling v. Merced Irr. Dist.*, 262 F.R.D. 509, 517

5

(E.D. Cal. 2009).   Moreover, it is indisputable that the disclosure of "details regarding one's personal finances or other financial information" is a serious invasion of privacy.  *Pioneer*, 40 Cal.4th at 372. The disclosure of Ms. Wolf's credit history would require the disclosure of information that is not relevant to Plaintiff's claims, such as her various lines of credit.

Significantly, the information sought regarding Ms. Wolf's credit history appears to be focused upon the status of Ms. Wolf's student loan debt.  (*See* Doc. 45 at 4.)  Plaintiff maintains that, contrary to Defendant's arguments, she was unable to obtain information regarding the debt during Ms. Wolf's deposition:

> Ms. Wolf stated originally that at least some of her student loans "were not in good standing." Next, Ms. Wolf claimed that the loans "had gone bad." But then Wolf claimed she "put them back in good standing." Then she claimed the loans "were in good standing," but immediately qualified this with "I was working towards that." Finally, Ms. Wolf testified to whether the loans were in good standing by claiming "I believe at the time they were."

(*Id.*)  Therefore, Plaintiff argues the "precise status" Ms. Wolf's credit when she was hired was "anything but clear."  (*Id.*)

To the extent Plaintiff seeks information regarding Ms. Wolf's student loan status and her credit worthiness, such information may be disclosed without the production of Ms. Wolf's full credit history. Consequently, Defendant **SHALL** disclose the information related to the student loan debt that was detailed in the credit report at the time she was considered for employment with Mission Bank.  The following redactions of the credit report **SHALL** occur before production:

1.      The information <u>above</u> "Applicant Information" shall <u>not</u> be redacted;

2.      All information under the heading "Applicant Information," except for Ms. Wolf's name shall be redacted;

3.      All information under the heading "Financial Summary," shall be redacted;

4.      All information under the heading "Variations," "Address Comparison," "Employment Comparison" and "Public records," shall be redacted;

5.      Under the heading "Credit History," all information, except for that which refers to "US DEP ED," shall be redacted;

6.      All remaining information after the "Credit History" section shall be redacted.

1            1.      Request for Production No. 28

2          Plaintiff requested Defendant produce "[a]ll documents related to complaints by Cecilia

3    Broussard, including her exit interview." (Doc. 45 at 7.)  Plaintiff asserts she "is informed and believes

4    that evidence of age discrimination was uncovered during the investigation of the Broussard

5    complaint."  Notably, Defendant claims otherwise.  Ms. Wolf, who conducted the Broussard exit

6    interview and who referred the matter to counsel for investigation, declares that Broussard did not

7    complain of age discrimination.  (Doc. 44 at 3)  Review of the exit interview document confirms this.

8    (Doc. 45-13 at11-12)  Moreover, at the conclusion of the investigation, the bank provided the result of

9    the investigation—a determination that no harassment or discrimination occurred but that the Bank

10   would be providing a "communication workshop."  Id. at 14.

11         Defendant objected to this request "to the extent that it seeks communications that are protected

12   by the attorney client privilege and documents protected from disclosure by the attorney work product

13   doctrine." (*Id.*)  Toward this end, Defendant produced "all non-privileged documents responsive to the

14   rest," including Ms. Broussard's exit interview.  (*Id.*)  In addition, Defendant created a privilege log,

15   indicating the documents being withheld were "[n]otes from investigation interviews" and investigation

16   findings.  (Doc. 45-13.)  Defendant presents the declaration of Katy Raytis who attests that Defendant

17   "engaged [her] as an attorney to provide legal analysis concerning the statements made by Ms.

18   Broussard during her exit interview.  I was asked to conduct interviews and to advise of my legal

19   opinion as to any potential exposure to liability and necessary corrective actions." (Doc. 48 at 2)

20         The preliminary question is whether the withheld evidence is protected by the attorney-client

21   communication privilege or the attorney work product doctrine immunity.  This analysis considers the

22   federal common law.  *United States v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) ["Issues concerning

23   application of the attorney-client privilege in the adjudication of federal law are governed by federal

24   common law."] quoting *United States v. Bauer*, 132 F.3d 504, 510 n. 4 (9th Cir.1997).

25   **A.**      **Attorney-client communication privilege**

26         The attorney-client privilege protects communications "(1) [w]here legal advice of any kind is

27   sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to

28   that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7)

from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir.2010). Because the content of the client's communication would be known if the attorney's advice was not also protected, the rule prohibits this disclosure as well. *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977).

### B.      Attorney work-product immunity

The immunity from disclosure provided by work-product doctrine applies to documents prepared by counsel which reflect the attorney's mental impressions in preparation for or during litigation. *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.' *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf),* 357 F.3d 900, 907 (2004).'" Id. at 568. Where documents are prepared for reasons in addition to the prospect of litigation, the party asserting the privilege must demonstrate the document was prepared "because of" litigation. *Id*. A document is prepared "because of" litigation if, in the absence of the prospect of litigation, the document would not have been prepared in "substantially similar form but for the prospect of litigation." *Id*. (Internal quotations omitted.) To make this determination, the Court must consider the totality of the circumstances. *Id*. Where there is a reason independent of litigation that the document was prepared, it is less likely the privilege will apply. *Torf* at 908-910. However, where the litigation purpose "so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole" (*Id.*), protection will be afforded.

Notably, discovery of these documents may be allowed even if protected.

(A) Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed.R.Civ.P. 26(b)(3). However, denying the immunity from disclosure should not occur lightly. The Ninth Circuit has advised, "The effort of a party or his representative in generating information needed for trial generally does not create information that will not be available to others willing to invest

8

1   similar effort in discovery. Accordingly, when a party makes a substantial showing that he is unable

2   through his efforts to obtain needed information, the balance of equities shifts in favor of disclosure of

3   trial preparation materials." *Admiral Ins. Co.* at 1494.  Nevertheless, "Discovery was hardly intended

4   to enable a learned profession to perform its functions either without wits or on wits borrowed from the

5   adversary."  *Hickman v. Taylor*, 329 U.S. 495, 516 (1947).

6           **C.      Notes from interviews conducted by counsel**

7           From the evidence provided, it appears Ms. Raytis interviewed only employees of Defendant

8   for purposes of providing legal advice about Ms. Broussard's claims. (Doc. 44 at 3) In *Upjohn Co. v.*

9   *United States*, 449 U.S. 383, 394–395 (1981), the Court determined that such communications are

10  protected even if the employees interviewed are lower level staff members who do not play a

11  substantial role in directing the corporation.  However, here there is no showing that employees were

12  advised that the purpose of the interview was to enable the attorney to advise the corporation related to

13  anticipated litigation or that the confidentiality of the notes were maintained.  *Admiral Ins. Co. v. U.S.*

14  *Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989); Doc. 45-13 at 9.

15          On the other hand, notes of counsel of the oral statements of witnesses generally are protected

16  by the work product doctrine. *Upjohn Co.*, at 399–400 ("Forcing an attorney to disclose notes and

17  memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the

18  attorney's mental processes").  The rationale for this protection is that when taking notes when listening

19  to a witness' account of an event, the lawyer is presumed to note the comments that the lawyer believes

20  have legal significance to the prosecution or defense of the matter.  *O'Connor v. Boeing N. Am., Inc.*,

21  216 F.R.D. 640, 643 (C.D. Cal. 2003)

22          On the other hand, the more difficult question is whether the documents were created in

23  anticipation of litigation to determine whether the work product doctrine applies.  As noted above, Ms.

24  Raytis attests that the documents were created to evaluate potential liability and to take "necessary

25  corrective actions." (Doc. 48 at 2)  Moreover, Ms. Wolf declares the investigation was conducted to

26  meet the Bank's "duty to investigate complaints and to reduce potential exposure to claims by taking

27  necessary corrective actions in the event that a lawsuit is initiated."  (Doc. 44 at 3)

28          Though, clearly, there are reasons other than anticipation of litigation that this investigation was

undertaken, the Court cannot say that the other reasons are wholly independent of litigation.  Indeed, it appears that the thrust for the investigation was to gain a tactical litigation advantage.  Thus, the Court finds the attorney work-product privilege applies.

### D.      Written statements provided to counsel

Defendant asserts that written statements were prepared by employees at the behest of counsel. As a general rule, documents prepared by clients in order to adequately inform the attorney about the factual situation so that the lawyer can render reliable advice, are protected.  However, this protection is provided only if the statements "are based on or would tend to reveal the client's confidential communications." *Matter of Fischel*, 557 F.2d at 211.  At the hearing, Defendant's counsel clarified that the written statements provided by the employees were a memorialization of what was discussed. Notably, the documents produced related to the investigation confirm this.  (Doc. 45-13 at 9 ["Please generate [a] Written Account of what you told us today and Email it to Diana."])  Thus, it appears both the attorney-client privilege and the work product immunity doctrine apply.

### E.      Counsel's findings and recommendations

Advice given by an attorney to her client is typical attorney-client communications that are protected.  *Matter of Fischel*, 557 F.2d at 211.  The conclusions and recommendations of Ms. Raytis related to the legal footing of the corporation based upon Ms. Broussard's claims are protected by the attorney-client communication privilege.

### F.      Disclosure of the protected documents

Plaintiff contends Defendant has waived the right to assert these privileges[1] with its First Affirmative Defense of "Failure to Notify Management of Alleged Discriminatory Acts," which is pleaded as follows:

> Plaintiff's claims are barred, in whole or in part by Plaintiff's unreasonable failure to take advantage of preventative and/or corrective opportunities and by her unreasonable failure to exhaust other internal remedies that Defendant provided.  Specifically, if Plaintiff perceived she was being treated differently because of her age she failed to make any internal complaints or raise the issue to management until after she tendered

---

[1] Plaintiff also argues that the attorney was not acting as an attorney when performing these acts.  However, other than citation to authority indicating that an attorney who does not provide professional services does not receive protection for the resulting work product and communications are not protected by the attorney-client privilege, Plaintiff fails to provide any basis for her claim that Ms. Raytis did not perform professional, legal services in connection with the Broussard investigation.

1    her resignation.  Additionally, Defendant's handbook provides for a process for
2    employees to follow if they believe they have been subject to unlawful discrimination.
     Plaintiff was aware of that process and did not follow it.  Instead, she raised the issue of
3    alleged unlawful discrimination when Defendant would not accede to her severance
     demands and she resigned.

4    (Doc. 27 at 8.)  Plaintiff argues this defense "is a waiver of any claim of attorney client privilege or

5    work product.  (Doc. 45 at 8, citing *Harding v. Dana Transport, Inc.,* 914 F. Supp. 1084 (D. N. J.

6    1996)*; Walker v. County of Contra Costa,* 227 F.R.D. 529 (N.D. Cal. 2005)).  Further, Plaintiff

7    maintains that "how an employer has handled other complaints is relevant to the avoidable

8    consequences defense" under California law.[2]  (*Id.*, citing *State Dep't of Health Servs. v. Superior*

9    *Court*, 31 Cal.4th 1026 (2003); *Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th 1403,

10   1421(Cal.App.3d Dist. 2007); *McKinzy v. Nat'l Railroad Passenger Corp.*, 836 F.Supp.2d 1014, 1025

11   (N.D. Cal. 2011)).

12        On the other hand, Defendant argues it has not waived the right to assert attorney-client

13   privilege related to the investigation following Cecilia Broussard's exit interview.  (Doc. 45 at 9-11.)

14   Defendant asserts, "The investigation is not in any way related to the complaints Plaintiff allegedly

15   made at the time her employment with Mission Bank ended, and thus is not a part of Mission Bank's

16   First Affirmative Defense."  (*Id.* at 10.)

17        As Defendant argues, each of the cases cited by Plaintiff to support a waiver of the privilege is

18   distinguishable from the facts now before the Court.  For example, in *Harding*, the court found the

19   privilege was waived where counsel acted as attorney and investigator and "the investigation, itself,

20   provide[d] a defense to liability" to the plaintiffs' Title VII claims.  *See Harding,* 917 F.Supp. at 1095.

21   The court noted that "Title VII permits employer liability which employers may refute by proving that

22   they reasonably and sufficiently investigated the allegations of discrimination," and the defendant

23   "attempted to utilize the results of [the] investigation both as a defense to liability under Title VII and

24   as an aspect of its preparation for the sexual discrimination trial itself."  *Id.* at 1096.  As a result, the

25   court held the privilege was waived, and the plaintiffs "must be permitted to probe the substance of

26

27   [2] Under this doctrine in a sexual harassment context, an employer may avoid damages if it can prove it took reasonable
     steps to prevent discrimination and correct harassment, the employee unreasonably failed to use the measures put in place
28   by the employer and using the measures would have prevented some of the harm.  *State Dep't of Health Servs*. 31 Cal.4th at
     1044-1045.

[the] alleged investigation to determine its sufficiency." *Id.*  In contrast, here, Mission Bank has not attempted to use the results of its investigation related to Ms. Broussard's complaints or exit interview.

Similarly, in *Walker*, the Northern District determined the privilege was waived where the defendant intended to rely upon the attorney's "investigation as a defense in th[e] action."  *Id.*, 227 F.R.D. at 535.  The court observed: "Where a party puts the adequacy of its pre-litigation investigation at issue by asserting the investigation as a defense, the party must turn over documents related to that investigation, even if they would ordinarily be privileged." *Id.* (citing *Harding*, 914 F.Supp. 1084; *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110 (2d Dist. 1997) (investigation documents normally covered by attorney-client privilege or work-product doctrine discoverable because defendant waived protections in raising adequacy of investigation as defense to discrimination claim)).

Through the request for production in issue, Plaintiff seeks information concerning an investigation that is not related to whether Plaintiff made complaints of age discrimination.   However, the First Affirmative Defense concerns whether *Plaintiff* raised the issue of age discrimination prior to the end of her employment with Mission Bank, and whether *Plaintiff* raised the issue of discrimination with management pursuant to Mission Bank's handbook.  Defendant has not put its investigation related to Ms. Broussard's complaints in issue.

Moreover, Plaintiff relies upon *Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th at 1421 for the proposition that the employer's "past record of acting on harassment complaints," demonstrates that this affirmative defense permits discovery into the conduct of earlier harassment investigations.  In *Myers*, the plaintiff failed to report the sexual harassment until after she was terminated.  *Id*. at 1411. However, rather than analyzing the extent to which a plaintiff may discover the content of the employer's previous record of acting on complaints, it noted merely that, "Since an employee's failure to avail herself of available protections does not provide the employer with a complete defense, the posture of this appeal from summary judgment does not require us to address the parties' dispute about whether Trendwest adequately advised plaintiff of availability of a grievance procedure." *Id*. at 1421.

Similarly, *McKinzy v. Nat'l R.R. Passenger Corp.*, 836 F. Supp.2d at 1025, the court reiterated that the avoidable consequences defense may preclude some or all damages "If a jury, taking account of

[the employer's] anti-harassment policies and procedures and its past record of acting on harassment complaints, found that [the plaintiff] was not reasonably diligent in reporting [the] misconduct." *Id*. At issue but not explained by these cases is what is meant by a "past record of acting on harassment complaints." However, *McKinzy* did not hold that the plaintiff is entitled to reviewed and independently evaluate the effectiveness or propriety of the prior investigations.

The existence of the Broussard investigation makes clear that, indeed, Defendant has, at least one time, investigated a complaint of harassment. Thus, unless there is reason to believe that the investigation was pro forma only or was not designed to render a correct outcome—and there is no such showing in this regard—the Court has no understanding of the basis of a purported claim that making a complaint would have been fruitless. Indeed, there appears to be no evidence that Plaintiff did not complain earlier out of any concern that the claim would not be addressed. While there may be other reasons, such as "natural feelings of embarrassment, humiliation, and shame [that] may provide a sufficient excuse for delay in reporting acts of [  ] harassment by a supervisor" (*State Dep't of Health Servs.*, 31 Cal.4th at 1045), Plaintiff does not make this claim—at least as of this time. Thus, the fact of the investigation, rather than its conduct, is at issue such that disclosure need not occur.

On the other hand, Plaintiff seems to argue that regardless of this affirmative defense, the evidence should be produced to shed light on Defendant's ageist motivation. On this point, the Court agrees that the identities of those interviewed should be provided. At the hearing—while maintaining that the identity of those interviewed by counsel should not be disclosed[3]—counsel admitted that all possible witnesses (which included Broussard's supervisor and all who worked for him or with him (Doc. 44 at 3)) were interviewed without the attorney screening them beforehand. Thus, revealing their identities poses no risk counsel's mental impressions would be revealed. As a result, the Court will require Defendant to supply Plaintiff the names of those interviewed during the Broussard investigation.

Because the attorney-client privilege has not been waived through the First Affirmative

---

[3] Counsel argued that Plaintiff knows who the interviewees were by virtue of her position at the Bank. From this, the Court is more firmly convinced that identifying those interviewed could not possibly implicate either the attorney-client communication privilege or the attorney work product immunity.

1   Defense, Plaintiff's motion to compel further responses to Request for Production No. 28 is only

2   **GRANTED in PART**.

3        **B.**     **Deposition of Jamee Pugh**

4        Plaintiff served a notice of deposition for Jamee Pugh on November 19, 2014, stating:

5   "NOTICE IS HEREBY GIVEN that Plaintiff JAN RICHMOND will take the oral deposition of

6   JAMEE PUGH as a managing agent of Defendant MISSION BANK, pursuant to *Rule 30* of the

7   *Federal Rules of Civil Procedure*, on December 3, 2014 at 4:00 p.m. at the office of Sylvia Mendez &

8   Associates . . ." (Doc. 45-4 at 2, emphasis omitted.)  Defendant objected to the notice on November 25,

9   2014, "on the ground that the Deponent is not an officer director, or managing agent of Mission Bank,"

10  and was "not subject to deposition by notice."  (Doc. 45-5 at 3.)  Plaintiff argues "Defendant was

11  required to produce Jamee Pugh to the properly noticed deposition or obtain a protective order."  (Doc.

12  45 at 11, citing Fed. R. Civ. P. 37(d)(2); *Huene v. U.S. Dep't of Treasury*, 11 A.F.T.R.2d (RIA) 705

13  (E.D. Cal. 2013).  Defendant asserts it was not required to produce Ms. Pugh because "[o]nly an

14  officer, director or managing agent of a corporation may be compelled to attend deposition via a notice

15  of deposition."  (*Id.* at 14, citing Fed. R. Civ. P. 30(b)(6)).  Further, Defendant argues the testimony

16  sought is not relevant and would not be admissible at trial  (*Id.* at 13-14.)

17       A party may take the deposition of "any person, including a party" pursuant to the procedures

18  outlined in the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 30(a)(1)-(2).  "Only a party to

19  litigation may be compelled to give testimony pursuant to a notice of deposition."  *U.S. v. Afram Lines*

20  *(USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994).  When a party is a corporation, a deposition "may

21  be noticed pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure."  *Id.*  "However, a

22  corporate employee or agent who does not qualify as an officer, director, or managing agent is not

23  subject to deposition by notice."[4] *Id.* (citing *GTE Products Corp. v. Gee*, 115 F.R.D. 67, 68-69 (D.

24  Mass. 1987); *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 169 (S.D.N.Y.1985)).

25  Rather, the testimony of an individual who is not a managing agent "must be subpoenaed pursuant to

26  Rule 45 of the Federal Rules of Civil Procedure."  *Id.*

27

28  [4] Notably, under California law, a notice of deposition is sufficient to compel the deposition of an employee.  Cal. Code. Civ. P. 2025.280(a).  However, as noted above, this is not sufficient in a federal case based upon a federal question.

"[T]he question of whether a particular person is a 'managing agent' is to be answered pragmatically, on an ad hoc basis, considering the facts of the particular case." *Calderon v. Experian Info. Solutions, Inc.*, 287 F.R.D. 629, 632 (D. Idaho 2012). Noting that the Ninth Circuit has not identified a standard to determine whether an individual is a "managing agent," the court in *Calderon* noted the following factors are consistently considered:

> (1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; (2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demand of the examining party; (3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which information is sought by the examination; (4) the general responsibilities of the individual respecting the matters involved in the litigation.

*Calderon*, 287 F.R.D. at 632 (citations omitted.) Some courts add a fifth factor which is "whether the individual can be expected to identify with the interests of the corporation." *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y.1985). The party seeking to take the deposition has a "modest" burden "to prove that the potential witness is a managing agent of the corporation." *Id.* at 632-33. Notably, employees may be considered managing agents for purposes of a deposition, regardless of their position or title at a company, "where their duties and activities are closely linked with the events giving rise to the lawsuit." *Calderon* at 633.

Here, Plaintiff argues Ms. Pugh is a "managing agent" because she was hired to fill the "Operations Manager" position vacated after Maria Cox was fired, and in this position Ms. Cox was "in change of all tellers and operations of the bank." (Doc. 45 at 11-12.) According to Plaintiff, the Operations Manager position "involved overseeing tellers, processing of all the daily reports, and 'everything associated with operations.'" (*Id.* at 12.) On the other hand, Defendant argues that the Operations Manager is "an entry level management position," and "Ms. Pugh's primary duty is to oversee the teller line." (*Id.* at 15.)

Given the information provided by the parties, it does not appear that Ms. Pugh is vested with authority to make decisions in corporate matters. There are individuals in positions of higher authority than Ms. Pugh and her job duties do not relate to matters involved in the litigation. Finally, because Ms. Pugh was hired in 2014—after Plaintiff's employment with the bank ended—she could not have personal knowledge of the events underlying Plaintiff's claims of age discrimination. Consequently,

Plaintiff has not carried her burden to show that Ms. Pugh is a managing agent whose deposition may be compelled with a notice of deposition. *See Calderon*, 286 F.R.D. at 633; *Afram Lines*, 159 F.R.D. at 413.  Plaintiff's motion to compel the deposition of Ms. Pugh is **DENIED**.

**IV.     Conclusion and Order**

Based upon the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs' motion to compel further discovery responses is **GRANTED IN PART** as follows:

1.     Plaintiff's motion to compel further responses to Request for Production Number 22 is **GRANTED** as follows:

a.     No later than April 17, 2015, Defendant **SHALL** disclose the information related to the student loan debt that was detailed in the credit report obtained by Defendant at the time Diana Wolf was considered for employment with Mission Bank. The following redactions of the credit report **SHALL** occur before production:

    i.     The information above "Applicant Information" shall <u>not</u> be redacted;

    ii.     All information under the heading "Applicant Information," except for Ms. Wolf's name shall be redacted;

    iii.     All information under the heading "Financial Summary," shall be redacted;

    iv.     All information under the heading "Variations," "Address Comparison," "Employment Comparison" and "Public records," shall be redacted;

    v.     Under the heading "Credit History," all information, except for that which refers to or is associated with "US DEP ED," shall be redacted;

    vi.     All remaining information after the "Credit History" section shall be redacted.

2.     Plaintiff's motion to compel further responses to Request for Production Number 28 is **GRANTED in PART**. The names of those interviewed during the Broussard investigation **SHALL** be provided to counsel no later than April 17, 2015; and

///

///

16

1          3.        Plaintiff's motion to compel the deposition of Jamee Pugh is **DENIED**.

2

3    IT IS SO ORDERED.

4          Dated:   **April 13, 2015**                              **/s/ Jennifer L. Thurston**
                                                     UNITED STATES MAGISTRATE JUDGE
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28