1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  JAN RICHMOND, | )  Case No.: 1:14-cv-00184- JLT |
| 12            Plaintiff, | )  <u>PRETRIAL ORDER</u> |
| 13       v. | )  Deadlines: |
| 14 | )  Motions in Limine Filing: 6/25/2015 |
| 15  MISSION BANK, | )  Oppositions to Motions in Limine: 7/2/2015 |
| 16            Defendant. | )  Hearing on Motions in Limine: 7/10/2015 |
| 17 | )  Trial Submissions: 7/10/2015 |
| 18 | )  Jury trial:  7/21/2015, 8:30 A.M. |

19        Jan Richmond, a former employee of Mission Bank, asserts she was unlawfully terminated from

20  her position at the bank.  Specifically, Plaintiff alleges Mission Bank is liable for wrongful termination

21  in violation of public policy, the Age Discrimination in Employment Act, and the Fair Employment and

22  Housing Act; failure to take all reasonable steps to prevent discrimination and retaliation; and

23  retaliation in violation of FEHA.  (*See generally* Doc. 2.)  Defendant argues Plaintiff's claims fail

24  because there were legitimate business reasons for each change in Plaintiff's duties, and asserts that

25  Plaintiff voluntarily resigned from her position.

26        Upon consideration of the Joint Pre-Trial Conference Statement (Doc. 52), the parties'

27  comments at the hearing on June 5, 2015, and the file in this case, the Court issues the following Pre-

28  Trial Order.

**A.     JURISDICTION/ VENUE**

The Court has jurisdiction over the claims in this action pursuant to 29 U.S.C. § 626 and 28 U.S.C. § 1367(a).  (Doc. 2 at 1; Doc. 52 at 2.)  Further, Plaintiff's claims arise out of events that occurred in Kern County, California.  Accordingly, venue is proper in the United States District Court for the Eastern District of California sitting in Bakersfield.  *See* 28 U.S.C. § 1391.

**B.     JURY TRIAL**

Plaintiff included a demand for jury trial in her Complaint. (Doc. 2 at 1.)  In addition, Defendant has demanded a trial by jury.  (Doc. 13 at 1.) Thus, trial will be by jury.

**C.     UNDISPUTED FACTS**

1.     The parties do not dispute the ages of Plaintiff and Diana (Loera) Wolf.

2.     Defendant is and was an "employer" as defined by the Age Discrimination in Employment Act ("ADEA"), particularly 29 U.S.C. § 630(b) and California Fair Employment and Housing Act ("FEHA"), particularly California Government Code § 12926(d), *et seq*.

3.     Plaintiff was an employee of Mission Bank as defined by California Government Code § 12926(c) and 29 U.S.C. § 630(f), during the periods relevant to this action.

4.     Plaintiff began working for Mission Bank on July 2, 2007 with a starting salary of $66,000 per year for 32 hours per week.

5.     Richard Fanucchi was Chief Executive Officer and President at time of Plaintiff's hire.

6.     Plaintiff was hired primarily to be Richard Fanucchi's Executive Administrative Assistant.

7.     Plaintiff occupied a private office at Mission Bank's administrative offices, which were located at Mission Bank's main branch at 1330 Truxtun Avenue, Bakersfield, California 93301.

8.     In April 2011, Fanucchi stepped down as President, but remained Chief Executive Offer.

9.     In April 2011, A.J. Antongiovanni was appointed President of Mission Bank.

10.     In 2011, Mission Bank's administrative offices moved to a building behind Mission Bank's main branch.

2

11.     After the move in 2011, Plaintiff was assigned to a cubicle space.

12.     During the course of Plaintiff's employment with Mission Bank, Plaintiff received annual bonuses and salary increases. The parties do not dispute the dates and amounts of the bonuses and salary increases.

13.     In December 2012, Diana (Loera) Wolf was hired by Mission Bank.

14.     Mission Bank acquired Mojave Desert Bank in January 2013 and the number of Mission Bank's employees increased due to the acquisition.

15.     Mission Bank was pursuing growth of its assets beginning in 2012 and as part of that growth, Mission Bank was launching what it refers to as the Human Capital Plan.

16.     Antongiovanni and Plaintiff discussed Plaintiff's job duties between February 2013 and April 2013.

17.     Fanucchi's last day as CEO was June 30, 2013. Antongiovanni took over as CEO on July 1, 2013.

**D.     DISPUTED FACTS**

All other facts are in dispute, including:

1.     Whether the terms and conditions of Plaintiff's employment were altered.

2.     Whether Mission Bank terminated Plaintiff's employment or Plaintiff voluntarily resigned from her employment with Mission Bank.

3.     Whether Plaintiff engaged in protected conduct under FEHA (Cal. Govt.  Code § 12940(h)).

4.     Whether Mission Bank engaged in the conduct alleged in the Complaint due to Plaintiff's membership in a protected class or participation in a protected activity.

5.     Whether Plaintiff was replaced by a substantially younger employee.

6.     Whether Plaintiff suffered damages as a result of any conduct alleged against Mission Bank in violation of FEHA or ADEA.

**E.     DISPUTED EVIDENTIARY ISSUES**

Both parties will seek to exclude witnesses not properly identified during discovery.  In particular, Defendants object to the following witnesses:

1.      Catherine Sullivan

2.      Solinda Garcia

3.      Margaret Knudson

4.      Kirk Hessler

5.      Elizabeth Lynn

6.      Jamee Pugh

7.      Sandra Haas

Plaintiff will seek to admit and Defendant opposes, evidence related to others who claim to have suffered age discrimination.

Plaintiff will seek to exclude EDD filings.

Defendant will seek to exclude information regarding Ms. Wolf's credit history.

Defendant will seek to exclude information regarding Ms. Broussard's complaint at her exit interview.

Defendant will seek to exclude unspecified hearsay evidence.

Defendant will seek to exclude the severance package offered to Plaintiff.

Counsel **SHALL** meet and confer (as set forth more fully below under the headnote, "Motions in Limine") about the anticipated motions in limine to determine whether they can reach a compromise on the topics.

**F.      RELIEF SOUGHT**

Plaintiff seeks compensatory damages, liquidated damages, punitive damages, attorney's fees, costs related to the lawsuit, and any other relief to which she may be entitled.  (Doc. 2 at 12; Doc. 52 at 7.)  Defendant seeks the dismissal of Plaintiff's claims in their entirety.  (Doc. 52 at 7.)

**G.      POINTS OF LAW**

**1.      The *McDonnell Douglas* Framework**

Plaintiff's claims under the ADEA and FEHA involve the shifting of burdens articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  *See Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008) (applying the *McDonnell Douglas* framework to a discrimination claim under the ADEA); *Guz v. Bechtal Nat'l Inc.*, 24 Cal.4th

4

317, 354 (2000) ("Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes").

First, the plaintiff bears the burden to establish a prima facie case of a violation of the ADEA and FEHA. *McDonnell Douglas Corp.*, 411 U.S. at 802; *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). If a plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155; *see also McDonnell Douglas Corp*, 411 U.S. at 803. If the defendant carries this burden, the inquiry does not end. Rather, the burden shifts back to the plaintiff to demonstrate the reasons proffered by defendant are pretextual. *Id.*; *McDonnell Douglas Corp*, 411 U.S. at 805. Consequently, the plaintiff has "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against [her]." *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 142 (2000).

## 2.    Failure to Prevent

It is an unlawful employment practice under FEHA "for an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring" in the workplace. Cal. Govt. Code § 12940(k). To succeed on a claim for failure to prevent, a plaintiff must establish "three essential elements: 1) plaintiff was subjected to discrimination, harassment or retaliation; 2) defendant failed to take all reasonable steps to prevent discrimination, harassment or retaliation; and 3) this failure caused plaintiff to suffer injury, damage, loss or harm." *Leland v. City & County of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008) (citing Cal. Civil Jury Instruction 12.11). Thus, there can be no claim for failure to prevent discrimination without first establishing an underlying claim for discrimination. *Trujillo v. North Co. Transit Dist.*, 63 Cal.App.4th 280, 286 (1998).

FEHA prohibits employers from discriminating against employees on the basis of age. Cal. Gov't Code § 12940(a). An individual may demonstrate discrimination by showing disparate treatment, disparate impact, or the existence of a hostile work environment. *See DeJung v. Superior Court,* 169 Cal. App. 4th 533, 549 n. 10 (2008); *Lyle v. Warner Bros. Television Production*, 38 Cal.4th 264, 279, 132 P.3d 211 (2006); *Guz*, 24 Cal.4th at 354, n. 20. A plaintiff establishes a prima facie case of age discrimination by providing evidence that: "(1) he was a member of a protected class,

5

(2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 24 Cal.4th at 355.

### 3.     Wrongful Termination

Under ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1).  This prohibition is "limited to individuals who are at least 40 years of age."  *Id.* § 631(a).  Similarly, FEHA imposes liability on an employer for discharging an employee over 40 years of age because of that person's age.  Cal. Gov't Code §§ 12926(b), 12940(a).

A plaintiff establishes a prima facie case of wrongful termination on the basis of age in violation of the ADEA and FEHA by showing she was "(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employees with equal or inferior qualifications or discharged under circumstances otherwise 'giving rise to an inference of age discrimination.'"  *Diaz*, 521 F.3d at 1207 (citation omitted); *see also Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 704 (9th Cir. 1993) (noting that California courts have adopted the analysis of the ADEA for age discrimination claims arising under FEHA).  Notably, the proof necessary for a plaintiff to establish a prima facie case under both the ADEA and FEHA "is minimal and does not even need to rise to the level of a preponderance of the evidence."  *Coghlan*, 413 F.3d at 1094; *see also Avila v. Continental Airlines*, 165 Cal. App. 4th 1237, 1246 (2008).   However, to prevail on a claim of age discrimination in violation of the ADEA at trial, a plaintiff faces a higher burden and must show her age was the "but-for" cause of the employer's adverse action.  *Gross v. FBL Financial Servs.*, 557 U.S. 167, 176 (2009).

Plaintiff's claim of wrongful termination in violation of public policy is derivative of her statutory claims under FEHA.  *See Nielsen v. Trofoholz Technologies, Inc.*, 750 F.Supp. 2d. 1157, 1171 (E.D. Cal. 2010) (citing *Jennings v. Marralle*, 8 Cal. 4th 121, 135-36 (1994)), *aff'd* 470 Fed. App'x 647 (9th Cir. 2012).  Thus, Plaintiff must establish a violation of FEHA to succeed upon her claim of violation of public policy.

*///*

6

**4.      Retaliation**

Under FEHA it is unlawful "[f]or any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h).  An employer violates the anti-retaliation provision if an "adverse employment action occurs because of the employee's opposition to conduct made unlawful." *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).  To establish a prima facie case for retaliation in violation of FEHA, a plaintiff must demonstrate "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005).

*a.      Adverse employment action*

"[A]n adverse employment action is one that materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks, citation omitted).  The Ninth Circuit has determined "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).  Adverse employment actions may include a transfer of job duties, undeserved performance ratings, and the dissemination of unfavorable job references. *Id.* at 1241 (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987); *St. John v. Employment Development Dept.*, 642 F.2d 273, 274 (9th Cir. 1981); *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997)).  Even a lateral transfer may constitute an adverse employment action. *See Yartzoff*, 809 F.2d at 1376.

*b.      Causation*

The requisite causal link between protected activity and an adverse employment action may be "inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff,* 809 F.2d at 1375; *see also Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002) ("causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c.      *Legitimate reason*

If a plaintiff has established a prima facie case, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155.  Under FEHA, a defendant must identify "reasons that are facially unrelated to prohibited bias," but the articulated reasons "need not necessarily have been wise or correct." *Guz*, 24 Cal.4th at 358.

**5.      Punitive Damages**

Plaintiff has the burden of proving what, if any, punitive damages should be awarded by a preponderance of the evidence.  NINTH CIRCUIT MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2009).  The jury must find that the defendant's conduct is "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1986); *see also Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994).

**H.      ABANDONED ISSUES**

None

**I.      WITNESSES**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiffs' Witness List:**

1.      Richard Fannucchi

2.      Jan Richmond

3.      A.J. Antongiovanni

4.      Margie Schwartz

5.      Salvador Chipres

6.      Stan Newman

7.      Diane Loera Wolf

8.      Catherine Sullivan

9.      Solinda Garcia

10.     Margaret Knudson

11.     Troy Richmond

12.     Bonnie Lidae

13.     Maria Cox

14.     Kirk Hessler

15.     Robert Martinez

16.     Judy Hopkins

17.     Sonia Jacobie

18.     Mary Wright

19.     Linda Hood

20.     Joanna Erassarret

21.     Elizabeth Lynn

22.     Jamee Pugh

23.     John Bianchi

24.     Sandra Haas

**Defendant's Witness List:**

1.      Richard Fanucchi

2.      Curtis Floyd

3.      A.J. Antongiovanni

4.      Diana Wolf

5.      JoAnna Erassarret

6.      Debbie McDaniel

7.      Gary Findley

8.      Jan Richmond

9.      Troy Richmond

10.     Amy Koellner

///

9

**J.      EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

**Plaintiff's Exhibits**

1.      Email dated 3/13 concerns for job

2.      Letter from Jan to R. Fanucchi dated 7/11 regarding concern for her job

3.      Memo re decrease in hours dated 4/12/13 (bate stamp 276-277)

4.      June 26, 2013 email from Jan Richmond to A.J. Antongiovanni (bate stamp 296)

5.      9/3/13 letter terminating employment and severance

6.      EDD statement dated Oct. 15, 2013

7.      Termination - severance

8.      Cox discipline/reprimand unsigned dated 6/18/14

9.      Cox discipline/reprimand signed dated 6/18/14

10.      Cox termination

11.      Wolfe credit report

12.      Mission Bank financial statements

13.      Employee evaluation for Jan Richmond through 3/13(bate stamp 158-159)

14.      Letter from Jan Richmond to Richard Fanucchi dated 3/5/13

15.      Email from Jan Richmond to A.J. Antongiovanni dated 12/3/12

16.      Email from Jan Richmond to A.J. Antongiovanni dated 4/9/13

17.      2013 salary worksheet (bate stamp 157)

18.      Mission Bank termination checklist (bate stamp 129)

19.      Checks bate stamped 132

20.      Earnings statement (bate stamp 133)

21.      Accrual balance report (bate stamp 134)

22.      Checks bate stamped 135

23. Earnings statement bate stamped 136

24. Accrual Balance Report (bate stamp 137)

25. Applicant Screening Report - Jan Richmond (bate stamps 142-147

26. Deposit confirmation (bate stamp 148)

27. Handwritten memo from Jan Richmond dated 9/3/13

28. 2012 Salary Worksheet (bate stamp 160)

29. 2011 Salary Worksheet (bate stamp 161)

30. 2010 Salary Worksheet (bate stamp 162)

31. 2009 Salary Worksheet (bate stamp 163)

32. 2008 salary worksheet (bate stamp 164)

33. Letter dated 3/28/07 (bate stamp 165-166)

34. Evaluation through 3/11 (bate stamp168-169)

35. Evaluation through 3/10 (bate stamp 170-171)

36. Administrative Job Duties (bate stamp 172-173)

37. Jan Richmond Evaluation through 3/09 (bate stamp 174)

38. Memo from Richard Fanucchi dated 7/1/10 (bate stamp 180)

39. Memo from accountant re problem with credit

40. 2010 W-2 (bate stamp 216)

41. Evaluation through 3/13 (bate stamp 263-264)

42. Letter to Jan Richmond dated 7/16/13 (bate stamp 280-281)

43. June 25, 2013 email from Jan Richmond to Antongiovanni (bate stamp 297)

44. Email from Jan Richmond to Antongiovanni dated 5/14/13 (bate 299-301)

45. Email from Jan Richmond to Antongiovanni dated 4/9/13 (bate 304)

46. Email dated 3/21/13 (bate 307)

47. Email dated 3/18/13 (bate 308)

48. 2/12/13 email from Jan Richmond to Fanucchi and Antongiovanni (bate 312)

49. Email from Jan Richmond to Antongiovanni dated 6/21/11 (bate 321)

50. Email dated 7/31/13 from Jan Richmond to Antongiovanni (bate 322)

51.     Email dated 6/24/13 from Jan Richmond to Antongiovanni (bate 327)

52.     Email from Jan Richmond to employees dated 3/22/13 (bate 334)

53.     Email from Jan Richmond re Fanucchi (bate 341-342)

54.     Email dated 12/3/12 from Jan Richmond to Antogiovanni (bate 347)

55.     Email from Jan Richmond to Antonviovanni and Bianchi (bate 369)

56.     Human Capital Plan Overview (bate 372-373)

57.     Mission Bank 2013 Strategic Plan (bate 395-398)

58.     Manager of Human Capital job description (bate 400-401)

59.     Check journal (bate 432-440)

60.     Email dated 12/15/12 from Antongiovanni (Plaintiff bate 53)

61.     Email from Antongiovanni (Plaintiff bate 54)

62.     Applicant Screening Report for Diana Loera with note from Bianchi (Plaintiff bate 083)

**Defendants' Exhibits**

1.     Letter to Richmond from Fanucchi dated March 28, 2007- Richmond 0042 - 0043

2.     "Did You Do" dated May 12, 2013 - MB 0212

3.     Answer to complaint by Sandra Haas - MB 249 - 258

4.     Applicant Screening Report for Diana (Loera) Wolf  - MB 456-461

5.     Applicant Screening Report for Jan Richmond - MB 0142 - 0147

6.     Cal. Unemployment Insurance Appeals Board Acknowledgment Letter Re Appeal
       Filed - MB 0259

7.     CB Investigation - MB 375 - 386

8.     CUIAB - Board Appeal - MB 0260-0265

9.     CUIAB - Decision - MB 0266 - 0272

10.    DFEH Charge of Discrimination - Richmond 0009

11.    DFEH Complaint - MB 0286 - 0287

12.    DFEH Complaint - Richmond 0001-0005

13.    DFEH Right to Sue Letter - Richmond 0006-0008

14.    Diana's Job Application MB 448-451

15. Diana's Resume - MB 452-453

16. EEOC letter and file - Richmond 0010-0014

17. EEOC Notice of Right to Sue - Richmond 0020 -0021

18. Email between Jan Richmond and A.J. Antongiovanni Re Separation Agreement and COBRA benefits - Richmond 0052

19. Email between Jan  Richmond and AJ Re Thanks dated April 8, 2013 - Richmond 0050

20. Email dated April 16, 2013  Re New Roles for Human Resources Function - Richmond 0048

21. Email dated April 18, 2013 Re New Roles in HR Function - Richmond 0059

22. Email dated April 9, 2013 showing meeting on April 10, 2013 to discuss role post June 30 - MB 304

23. Email dated December 15, 2013 from A.J. Antongiovanni to All Employees Re New employees - Richmond 0053

24. Email dated December 3, 2012 from Jan Richmond to A.J. Antongiovanni and John Bianchi Re Jan's lack of information on Diana Wolf - MB 369

25. Email dated February 12, 2013 from Jan Richmond to Richard Fanucchi and A.J. Antongiovanni re tardiness to meetings, including management conference on February 9 -- MB 312

26. Email dated February 15, 2013 from Jan Richmond to A.J. Antongiovanni attaching "Did You Do" list - MB 309-310

27. Email dated June 21, 2011 from Jan Richmond to A.J. Antongiovanni Re asking for consideration of HR position - MB 321

28. Email dated March 21, 2013 from Jan Richmond to A.J.  Antongiovanni requesting offer letter - Richmond 0016

29. Email dated May 13, 2013  from Jan to AJ Re Leadership Seminar - Richmond 0046-0047

30. Email dated May 31, 2013 from A.J. Antongiovanni to Staff - Richmond 0044 - 0045

31. Email dated May 31, 2013 from A.J. Antongiovanni to Staff Re A.J.'s Leadership

Development - Richmond 0061 - 0062

32. Email dated September 25, 2013 from A.J. Antongiovanni to Jan Richmond re revision to severance offer - Richmond 0017

33. Email from A.J. Antongiovanni to All Employees Re Annual Performance review/Salary Adjustments dated April 11, 2013 - Richmond 0049

34. Email from A.J. Antongiovanni to Diana Wolf forwarding September 25, 2013 email to Jan Richmond - MB 0149

35. Email from A.J. Antongiovanni to John Bianchi re Diana's background check being clear - Richmond 0054

36. Email from A.J. Antongiovanni to Jan Richmond dated September 25, 2013 - MB 0291

37. Email from Jan Richmond to All Employees dated November 30, 2010 advertising open position "in keeping with our desire to promote from within whenever possible…" - MB 366

38. Email from Richmond to Antongiovanni dated June 26, 2013 Re Thank you for apology - Richmond 0066

39. Email from Jan Richmond to A.J. Antongiovanni RE Appointment dated May 28, 2013 - MB 0298

40. Email from Jan Richmond to A.J. Antongiovanni Re Board Contacts dated June 25, 2013 - MB 0297

41. Email from Richmond to Antongiovanni Re Leadership Seminar dated May 14, 2013 - MB 0299 – 0301

42. Email from Jan Richmond to A.J. Antongiovanni Re Thank you for the apology - MB 0296

43. Email from Jan Richmond to Richard Fanucchi and A.J. Antongiovanni dated April 24, 2013 re Vacation Days - MB 0302

44. Email from Jan Richmond to A.J. Antongiovanni, Steve Del Papa and Stuart Annable Re Hours Going Forward dated July 1, 2013 - MB 0295

45. Employee Acknowledgment Re Employee Security, Internet and Email Policy - MB 207

14

46.    Employee Evaluation of Jan Richmond (April 2013) - MB 0158-0159

47.    Employee Evaluation of Jan Richmond (April 2013) - Richmond 0040-0041

48.    Employee Evaluation of Jan Richmond dated April 19, 2011 - MB 0168 – 0169

49.    Employee Evaluation of Jan Richmond dated April 2009 - MB 0172-0174

50.    Employee Evaluation of Jan Richmond dated April 2010 - MB 0170-0171

51.    Employee Handbook dated September 2012 - MB 0001 - 0128

52.    Final Paycheck - MB 0132

53.    Handbook Acknowledgment Form dated July 2, 2007 - MB 208

54.    Handwritten note dated September 3, 2013 from Jan Richmond re personal belongings - MB 0156

55.    Human Capital Manager Job Description - MB 400-401

56.    Human Capital Plan - MB 372 - 373

57.    Human Capital Planning Timeline - MB 374

58.    Insurance Documents - MB 0176 - 0179, 0181 – 0206

59.    Invitation Accepted Re: Transition HR Responsibilities dated March 21, 2013 - Richmond 0051

60.    Jobs.com Registration - Richmond 0068-0070

61.    Letter dated April 12, 2013  from A.J. Antongiovanni to Jan Richmond - Richmond 0036 - 0039

62.    Letter dated April 12, 2013 from Antongiovanni to Jan Richmond - MB 0288 - 0290

63.    Letter dated July 16, 2013 from Antongiovanni to Richmond - MB 0292 - 0294

64.    Letter from DFEH dated Jan. 30, 2013 Re Notice of Filing of Discrimination Complaint - MB 0285

65.    Letter from Fanucchi to Richmond Re Offer of Employment dated March 28, 2007 - MB 0165 - 0166

66.    Letter from Jan Richmond to Richard Fanucchi dated 7/11 - Richmond 0055

67.    Letter from Katy Raytis to CUIAB - MB 0273 - 0284

68.    Letter to Jan Richmond from AJ dated July 16, 2013 - Richmond 0034 - 0035

15

69.   List of Individuals Interviewed by Katy Raytis - MB 462

70.   MB Accrual Balance Report - Richmond 0023

71.   Memo from Jan Richmond to Richard Fanucchi dated March 5, 2013 - Richmond 0015

72.   Memo to Board of Directors from Richmond dated September 3, 2003 - Richmond 0031

73.   Memorandum to Board of Directors from Jan Richmond dated September 3, 2003 (2013) - MB 368

74.   Memorandum by Richard Fanucchi Re Vacation Accrual dated March 2008 - MB 0167

75.   Memorandum to Jan Richmond from Richard Fanucchi re Vacation Days dated July 1, 2010 - MB 0180

76.   Memorandum to Jan Richmond Re Payroll Insurance Information dated May 15, 2012 - MB 0175

77.   Mission Bank Termination Checklist - MB 0129

78.   Notice of Requirement to Register for Work from EDD - Richmond 0067

79.   Payroll Records MB 402-447

80.   Jan Richmond's Resume - MB 0138-0139

81.   Salary Worksheet (2008) - MB 0164

82.   Salary Worksheet (2009) - MB 0163

83.   Salary Worksheet (2010) - MB 0162

84.   Salary Worksheet (2011) - MB 0161

85.   Salary Worksheet (2012) - MB 0160

86.   Salary Worksheet (2013) - MB 0157

87.   Salary Worksheet (2013) - Richmond 0033

88.   Separation Agreement - MB 0151-0155

89.   Severance Offer - Richmond 0025-0030

90.   Strategic Planning Session 2013-2015 - MB 387 - 399

91.   Summons and complaint by Sandra Haas - MB 220 - 248

92.   Text messages between A.J. Antongiovanni and Jan Richmond dated September 16 and September 25 - MB 0150

16

93.     Transcript of CUIAB Hearing

94.     W-4 for 2007 - MB 209

On or before **June 19, 2015**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examining each other's exhibits.

1.      At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits.  In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist.  <u>Thus, any exhibit not previously provided in discovery **SHALL** be provided at least five court days in advance of the exhibit conference</u>.

2.      At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence.  These exhibits **SHALL** be marked as a joint exhibit and numbered as directed above.  Joint exhibits **SHALL** be admitted into without further foundation.

All Joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.).  Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The Parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered which is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits.  The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

**INDEX OF EXHIBITS**

**EXHIBIT#**              **DESCRIPTION**                                          **ADMITTED
IN EVIDENCE**

3.      As to any exhibit which is not a joint exhibit but to which there is no objection to its

17

introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party.   Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4.       Each exhibit binder shall contain an index which is placed in the binder before the exhibits.   Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

**INDEX OF EXHIBITS**

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|----------|-------------|----------------------|----------------------|-----------------|

5.       On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Admissible but for Foundation."

6.       On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled "Other Objections."

After the exhibit conference, each counsel SHALL develop four complete, legible sets of exhibits.  Counsel SHALL deliver three sets of their exhibit binders to the Courtroom Clerk and provide one set to opposing counsel, no later than 4:00 p.m., on **July 17, 2015**.  Counsel SHALL determine which of them will also provide three sets of the joint exhibits to the Courtroom Clerk.

7.       The Parties SHALL number each page of any exhibit exceeding one page in length.

**K.     DISCOVERY DOCUMENTS**

The following is a list of discovery documents – portions of depositions, answers to interrogatories, and responses to requests for admissions – that the parties expect to offer at trial. NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(12).

**Plaintiff anticipates offering the following discovery documents at trial**:

1.       None.

**Defendant anticipates offering the following discovery documents at trial**:

1.      Deposition Transcripts from:

      a.      Jan Richmond

      b.      Troy Richmond

      c.      Margie Schwartz

      d.      Maria Cox

      e.      Stanley Newman

2.      Plaintiff's Response to the First Set of Interrogatories

3.      Plaintiff's Response to Requests for Admission

If either party wishes to rely upon discovery documents or deposition transcripts at trial, they SHALL lodge the original discovery requests and responses and/or the original or certified copy of the pertinent transcripts, no later than **July 17, 2015.**  If the proffering party wishes the jury to view the discovery document, only the request and response at issue may be visible on the page(s) and all extraneous material must be redacted or the request and the response re-typed on a clean page.[1]

**L.      FURTHER DISCOVERY OR MOTIONS**

No further discovery is sought by either party.

**M.      MOTIONS IN LIMINE**

Any party may file motions in limine.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  "Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984); *Jonasson v. Lutheran Child and Family Services*, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose.  *Id.*

**In advance of filing any motion in limine, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine.  Along with their**

---

[1] Counsel should have at least two extra copies of the redacted version for review by the Court and opposing counsel before publication is allowed.

1    **motions in limine, the parties SHALL file a certification demonstrating counsel have in good faith**

2    **met and conferred and attempted to resolve the dispute.  Failure to provide the certification may**

3    **result in the Court refusing to entertain the motion.**

4              Any motions in limine must be filed with the Court by **June 25, 2015.**  The motion must clearly

5    identify the nature of the evidence that the moving party seeks to prohibit the other side from offering

6    at trial. Any opposition to the motion must be served on the other party, and filed with the Court by

7    **July 2, 2015**. The Court sets a hearing on the motions in limine on **July 10, 2015,** at 10:30 a.m.

8    Appearances via Courtcall are authorized.

9              The parties are reminded they may still object to the introduction of evidence during trial.

10   **N.    STIPULATIONS**

11             The parties stipulate that copies may be used in place of originals.

12   **O.    AMENDMENTS/ DISMISSALS**

13             None at this time.

14   **P.    SETTLEMENT NEGOTIATIONS**

15             The parties have agreed to participate in private mediation on June 12, 2015.  (Doc. 52 at 20.)

16   **Q.    AGREED STATEMENT**

17             None

18   **R.    SEPARATE TRIAL OF ISSUES**

19             None.

20   **S.    APPOINTMENT OF IMPARTIAL EXPERTS**

21             None requested.

22   **T.    ATTORNEYS' FEES**

23             If successful at trial, Plaintiff will be seeking attorney fees pursuant to 29 USC §§ 626 and 216

24   as well as Cal. Gov't Code § 12965(b).  (Doc. 52 at 21.)

25   **U.    TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

26             Jury trial is set for **July 21, 2015**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the

27   United States Courthouse, 510 19th Street, Bakersfield, California.  Trial is expected to last no longer

28   than 5 days.

## V.       TRIAL PREPARATION AND SUBMISSIONS

### 1.       Trial Briefs

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **July 10, 2015.**

### 2.       Jury Voir Dire

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **July 10, 2015.**

### 3.       Statement of the Case

The parties **SHALL** file a joint non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **July 10, 2015.**

### 4.       Jury Instructions & Verdict Form

The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than **June 25, 2015.** The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than **July 2, 2015**. At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **July 10, 2015**, and identify such as the agreed-upon jury instructions and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than **July 10, 2015,** and identify such as the disputed jury instructions and verdict forms.  At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict

21

forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction.  Each instruction SHALL be numbered.

**W.    OBJECTIONS TO PRETRIAL ORDER**

Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

**X.    MISCELLANEOUS MATTERS**

None.

**Y.    COMPLIANCE**

Strict compliance with this order and its requirements is mandatory.  All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with this order and its requirements.


IT IS SO ORDERED.

Dated:   **June 5, 2015**                          **/s/ Jennifer L. Thurston**
                                                                   UNITED STATES MAGISTRATE JUDGE